UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 15 CR 739-2 |
| v. | Judge Manish S. Shah |
| RONALD CRUMP | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, submits the following sentencing memorandum. For the reasons set forth below, the government respectfully requests that this Court sentence defendant, Ronald Crump, to a sentence within the Guidelines range.

**I.     OFFENSE CONDUCT**

As set forth in the plea agreement, the Presentence Investigation Report (PSR), and the Government's Version of the Offense attached thereto, the defendant pled guilty to passing counterfeit currency on or about January 1, 9, and March 19, 2015. In total, on those three dates, Crump passed $5,500 of counterfeit currency.

However, defendant's actions were not isolated incidents. They were a part of a larger scheme by defendant, his co-defendants, and several uncharged co-conspirators to pass counterfeit currency at retail stores throughout the Chicago area. In summary, during the period from in or around January 2015 to in or around April 2015, the defendant along with co-defendants Earl Simms and Charles Russell, and Individuals A and B, obtained counterfeited obligations of the United States, including a Federal Reserve Note in the denomination of one hundred

dollars bearing Serial Number LG64647291B ("the counterfeit bills"). Defendant and his co-conspirators agreed to work together to pass these counterfeit bills at various retail stores in the Chicago area. Defendant and his co-conspirators primarily passed these counterfeit bills at various locations of Retail Store A. During the conspiracy, defendant and his co-conspirators traveled together to various locations of Retail Store A, each in possession of the counterfeit bills, in order to make purchases with the counterfeit bills. After defendant and his co-conspirators passed the counterfeit bills to purchase merchandise at Retail Store A, defendants and their co-conspirators returned the items to Retail Store A for a refund in order to obtain genuine United States currency. In order to avoid detection, defendant and his co-conspirators frequently did not return merchandise to the same store at which they had purchased it. Defendants often traveled together when returning merchandise that they bought with counterfeit bills. In total, defendant and his co-conspirators passed at least $20,600 in counterfeit bills, thus causing a loss of at least $20,600 to Retail Stores A and B.

Contrary to defendant's assertion, defendant and his co-conspirators were observed working together on numerous occasions. For example, on January 9, 2015, Crump and co-defendant Simms both passed $600 of counterfeit at Retail Store A located in Calumet City, Illinois in back-to-back transactions. At approximately 8:40 p.m., Simms and Crump approached the register together. Simms completed a purchase for $600. Immediately after Simms made his

2

purchase, Crump approached the same register and made a $600 purchase. All $1,200 of counterfeit had had the same serial number.

On or about March 19, 2015, Crump was again seen passing counterfeit at the same location of Retail Store A as his co-defendants. On that day, Macy's security personnel observed co-defendant Simms and Russell and Individual B make purchases using counterfeit currency at Retail Store A located on Michigan Avenue in Chicago. Approximately an hour after Simms, Russell, and Individual B passed counterfeit, law enforcement observed Crump pass $2,200 in counterfeit currency bearing the same serial number at the same location of Retail Store A.

Moreover, defendant was arrested for passing counterfeit currency on January 1, 2016, while he was with other individuals who were also passing counterfeit currency with the same serial number as the counterfeit that Crump and his co-defendants were using. On January 2, 2016, the day after Crump passed counterfeit at Retail Store B, Crump was stopped by the Chicago Police Department with three unindicted individuals at another retail store in downtown Chicago. Two of those unindicted individuals each passed $1,000 in counterfeit $100s bearing the same serial number as the counterfeit passed by the defendant and his co-defendants. The third individual who was present that day who did not pass counterfeit, also drove co-defendant Simms, Russell, and Individual B to pass counterfeit at Retail Store A on March 19, 2016.

## II. THE GUIDELINES CALCULATIONS

The government agrees with the Guidelines calculations as set forth in the PSR.

As an initial matter, the government agrees with probation that defendant should be held accountable for all counterfeit that was passed during the course of the conspiracy. *See* PSR ¶ 18. Pursuant to Guidelines § 1B1.3(a)(1)(B), defendant should "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)" be held accountable for all acts that were "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity . . ." Moreover, Guidelines § 1B1.3(a)(2) states that with respect to offenses of conviction that are grouped together for purposes of calculating the offense level, the defendant should be held accountable for all acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction . . ."

While the government recognizes that the scope of relevant conduct is not always the same as the scope of the entire conspiracy (Application Note 3(B) to Guideline § 1B1.3), in this case the two are coextensive. The evidence shows that Crump had an agreement with others involved in this conspiracy to repeatedly purchase merchandise with counterfeit currency at various locations of Retail Store A and to return that merchandise in exchange for genuine currency. This is shown

by the fact that Crump was at the same location, passing the same counterfeit bills as other co-conspirators on at least January 2, January 9, and March 19, 2015. The fact that defendant was passing counterfeit on those dates with his co-defendants is more than a coincidence; it is evidence that the activities were planned and coordinated. In addition, the merchandise that Crump purchased on both January 9 and March 19 was returned. The returns show that Crump was engaging in the same criminal pattern as his co-conspirators. He was not purchasing merchandise and keeping it or re-selling it elsewhere. He was returning it at Retail Store A almost immediately after purchasing it, which is in line with the general plot of the conspiracy. Therefore, the government believes that Crump should be held accountable for the entire $20,600 that was passed during the course of the conspiracy.

Pursuant to Guidelines § 3D1.2(d), Counts 2, 3, and 9 are grouped together for purposes of calculating the Guidelines range. PSR ¶ 16. The base offense level is 9, pursuant to Guideline § 2B5.1(a). *Id.* ¶ 9. The offense level should be increased by 4 pursuant to Guideline §§ 2B5.1(b)(1)(B) and 2B1.1(b)(1)(C) because as discussed above, the face value of the counterfeit items, including relevant conduct, was approximately $20,600. *Id.* ¶ 18.

Given the fact that defendant is contesting his involvement in the larger conspiracy, the government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guidelines § 3E1.1(a).

As detailed in the PSR, defendant receives ten criminal history points as a result of his six prior convictions. *Id.* ¶¶ 32-38. In addition, defendant receives two additional criminal history points pursuant to Guidelines § 4A1.1(d) because he committed the instant offense while on probation. Therefore, defendant receives a total of twelve criminal history points and is in criminal history category V. *Id.* ¶ 40.

An offense level of 13, when combined with a criminal history category of V, results in an anticipated advisory Sentencing Guidelines range of 30 to 37 months of imprisonment. *Id.* ¶ 74.[1]

### III. THE SECTION 3553(A) FACTORS SUPPORT A SENTENCE AT WITHIN THE GUIDELINES RANGE

The Court must consider the factors set forth in Title 18, United States Code, Section 3553(a) in determining an appropriate sentence. The framework for determining an appropriate sentence is set forth in 18 U.S.C. § 3553(a), which requires that the Court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence; and (5) the need to protect the public from further crimes of the defendant. Considering these factors, a sentence within the Guidelines range is sufficient, but not greater than necessary, to reflect the seriousness of Crump's offenses, provide just punishment for Crump's crimes,

---

[1] If the Court determines that defendant has accepted responsibility, the offense level would be 11. Thus, the Guidelines range would be 24-30 months' imprisonment.

6

and provide adequate deterrence, while taking into consideration Crump's history and characteristics.

### A. Nature and Circumstances of the Offense

The passing of counterfeit currency is a serious offense that has real world costs to the retailers at which the counterfeit currency is passed as genuine as well as to the United States government. In this case, in total defendant and his co-conspirators passed over $20,600 of counterfeit currency at Retail Stores A and B. Defendant and his co-conspirators used the counterfeit to purchase merchandise and then returned that merchandise in exchange for genuine currency. In addition to the loss of money, the retail stores incurred additional costs related to re-stocking of merchandise and additional security.

In addition, the criminal actions of the defendant were planned and coordinated. The defendant used the same counterfeit bills as his co-conspirators, often traveled to stores on the same days as his co-conspirators to make purchases using the counterfeit bills, and even purchased merchandise from the same registers. Defendant also took steps to hide his crimes, such as traveling to multiple stores and returning merchandise at a different store than he purchased the merchandise from. These coordinated efforts by the defendant and his co-conspirators were designed to help them evade detection by law enforcement.

Moreover, the indictment likely underestimates the scope of the defendant's crimes. As noted in the PSR in paragraph 53, there is evidence that defendant was passing counterfeit currency as early as November 1, 2104. In addition, Retail Store A has records from numerous other occasions during which the same counterfeit bill

7

used by defendant was passed. However, due to lack of video or poor video quality, law enforcement was unable to identify the individuals who passed the counterfeit on those additional occasions.

A sentence within the Guidelines range is appropriate given the coordinated actions of and the scope of defendant and his co-defendant's conduct.

### B.  History and Characteristics of the Defendant

Defendant has a history of committing violent offenses. He has previously been convicted for battery, vehicular hijacking, attempted unlawful use of a weapon by a felon, and domestic abuse, amongst other crimes. PSR ¶¶ 32-37. Defendant has also been arrested an additional thirteen times for similarly violent offenses (PSR ¶¶ 43-55). In addition, defendant has a pending case in which he is charged with being an armed habitual criminal, being a felon in possession of a firearm, and aggravated unlawful use of a weapon. While defendant's conduct in this case did not involve violence, defendant's violent past cannot be ignored.

In addition, there is little evidence that defendant has attempted to earn a living for himself in a legitimate, law-abiding fashion. Defendant last held a full time job in 2013. *Id.* ¶ 93. Of particular concern is the fact that defendant quit the last two jobs that he had because work was "slow." *Id.* ¶¶ 93, 94. Since those last two jobs, defendant has only worked sporadically. *Id.* ¶ 94. Instead, defendant has opted to earn a living through other means, like passing counterfeit currency.

### C.  Need for Deterrence

Defendant's sentence should also be severe enough to adequately deter him from engaging in the passing of counterfeit currency again and to sufficiently deter

others from engaging in this illegal conduct. A sentence of incarceration is necessary to show the defendant and his co-defendants that financial crimes are not an appropriate way to make a living. A sentence within the Guidelines range is also necessary to show defendant that the courts will also take non-violent offenses seriously. In addition, defendant's repeated criminal conduct and failure to follow conditions of probation show that defendant lacks respect for the law. A Guidelines sentence in this case will show defendant that he cannot continue to violate the law with impunity.

## IV. RESTITUTION

Restitution is mandatory in this case. *See* 18 U.S.C. § 3663A. The government believes that defendant along with his co-defendants liable for the full $20,600 that was lost as part of the criminal scheme in this case. PSR ¶ 117. As explained above, defendant was a full participant in the scheme to pass counterfeit bills at retail stores in the Chicago area.

## V. SUPERVISED RELEASE CONDITIONS

Consistent with the goals of sections 3583(c) and 3553(a), given defendant's lack of employment and his violent criminal history, the government recommends a term of Supervised Release of three years. The conditions of supervised release proposed in the PSR are consistent with the statutory goal of protection of the public and affording adequate deterrence to additional criminal conduct. Discretionary conditions 1, 2, 4, 6-8, 17, 18, and special condition 3, 5, 6, 8, and 11, will help the defendant to find and maintain lawful employment and to lead a law abiding life. Discretionary condition 9 will ensure that defendant stops using illegal

9

narcotics. Finally, discretionary conditions 14-16, and special conditions 7, 10, and 13 will facilitate the probation officer's ability to keep informed of defendant's conduct and condition, and will also allow the probation officer to ensure that defendant is meeting his restitution obligations.

## VI. CONCLUSION

For all of the foregoing reasons, the government respectfully requests this Court sentence defendant to a term of imprisonment within the Guidelines range. Such a sentence would reflect the seriousness of the offense, promote respect for the law, and provide a just punishment for the offense as set forth in Title 18, United States Code, Section 3553.

Dated: September 29, 2016

Respectfully submitted,
ZACHARY T. FARDON
United States Attorney

By: /s/ *Jordan M. Matthews*
Jordan M. Matthews
Assistant United States Attorney
219 S. Dearborn Street, Ste. 500
Chicago, Illinois 60604
(312) 697-4090